**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

| | |
|---|---|
| MOHAMMAD and MURSHADA EHSAN, | Chapter 7 |
| | Case No. 15-27853 (CMG) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| HABIB LOSKOR and FAHIM RAHMAN, | |
| Plaintiffs, | Adv. Pro. No. 16-01715 (CMG) |
| v. | |
| MOHAMMAD and MURSHADA EHSAN, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

| | |
|---|---|
| MOHAMMED RAHMAN and SHARMILLY CHOWDHURY, | Chapter 7 |
| | Case No. 15-27857 (CMG) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| HABIB LOSKOR and FAHIM RAHMAN, | |
| Plaintiffs, | Adv. Pro. No. 16-01716 (CMG) |
| v. | |
| MOHAMMED RAHMAN and SHARMILLY CHOWDHURY, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - -X

# OPINION

**APPEARANCES:**

**JEFFREY W. HERRMANN, ESQ.**
**Cohn Lifland Pearlman Herrmann**
Attorney for Plaintiffs

**KIRSTEN B. ENNIS, ESQ.**
**Kirsten B. Ennis, LLC**
Attorneys for Defendants/Debtors

**CHRISTINE M. GRAVELLE, U.S.B.J.**

## Introduction

At issue before this Court is whether a New Jersey state court judgment based upon a complaint pleading fraud, which judgment was the result of a party's failure to provide discovery responses, collaterally estops the losing party from further litigating the underlying facts in this non-dischargeablity action. For the reasons set forth, this Court finds that based upon the facts presented the matter was not "actually litigated" and the issue of fraud was not essential to the judgment, and therefore the motion for summary judgment must be DENIED.

## Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

**Factual and Procedural History**

Mohammad and Murshada Ehsan filed a joint bankruptcy petition on September 22, 2015. Mohammed Rahman and Sharmilly Chowdhury filed a joint bankruptcy petition on the same day. Habib Loskor ("Loskor") and Fahim Rahman ("Rahman") (collectively "Plaintiffs") filed the present adversary proceedings in each bankruptcy on September 16, 2016. The adversary proceedings were consolidated by order dated December 21, 2016.

The factual allegations upon which this matter is based are contested, however for the purposes of the legal issues raised by this motion this Court need not make any findings as to the truth or falsity of those allegations. As such, they will only be briefly summarized.

Mohammad Ehsan, Murshada Ehsan, Mohammed Rahman, and Chowdhury Sharmilly, the Debtors (collectively "Defendants") operated Caltech International Trading Corporation ("Caltech"). Mohammad Ehsan was the Chief Executive Officer of Caltech. Murshada Ehsan was the Chief Financial Officer of Caltech. Mohammed Rahman was the President of Caltech, and Chowdhury Sharmilly was the Chief Operating Officer of Caltech.

Caltech was purportedly engaged in the business of acquiring and recycling scrap metal. Plaintiffs individually made separate loans to Caltech based upon alleged representations made by Defendants that Caltech was in the business of wholesale distribution of automotive and industrial scrap metal. The loan from Loskor to Caltech was memorialized by a note which was signed by Mohammad Ehsan as CEO of Caltech. No note has been provided with regards to the loan from Rahman to Caltech.

Plaintiffs allege that the monies loaned were not used for scrap metal trading, but rather diverted out of the Caltech account in a Ponzi scheme. Defendants allegedly defaulted on the

loan and Caltech went out of business, leading to the filing of a state court lawsuit (the "State Court Litigation").

The procedural history of the State Court Litigation is more relevant to the motion before this Court. The State Court Litigation was filed on or about April 2, 2014 against Defendants individually, and Caltech. The complaint contained four counts which were labeled as "Fraud," "Contract," "Claim on Note," and "Unjust Enrichment." Of the four counts, only the Fraud count referred to the Defendants individually.

Defendants filed a *pro se* answer with affirmative defenses and a counterclaim on May 15, 2014. Shortly thereafter, Defendants retained counsel, who filed an amended answer on June 24, 2014. That same day, Defendants served discovery requests upon Plaintiffs. After Plaintiffs did not provide timely responses to discovery, Defendants moved to strike the complaint. Said motion was denied by order dated October 10, 2014, but the order provided specific timelines for Plaintiffs to provide discovery to Defendants.

Plaintiffs served discovery requests upon Defendants on August 1, 2014. After Defendants did not provide timely responses, on December 16, 2014 Plaintiffs moved to strike Defendants' answer, affirmative defenses, and counterclaim. On January 9, 2015, the state court denied the motion, but, similarly to the October 10, 2014 order, set forth specific timelines for Defendants to provide discovery to Plaintiffs, with responses to written discovery required on or before February 6, 2015.

In the interim, on January 23, 2015 Defendants' attorney moved to be relieved as counsel based upon Defendants failure to pay legal fees as well as their failure to "[provide] counsel [with] information in response to Plaintiffs' written interrogatories and document requests, despite multiple requests." That motion was granted on February 20, 2015.

After Defendants did not provide discovery by the February 6 deadline in the prior state court order, on February 18, 2015 Plaintiffs renewed their motion to strike Defendants' answers, affirmative defenses, and counterclaim. On March 6, 2015, the state court granted the motion and dismissed Defendants answers, affirmative defenses, and counterclaim without prejudice pursuant to N.J.R. 4:23-5(a)(1).[1] The dismissal order indicates that the motion was unopposed by Defendants.

Defendants failed to provide discovery in the 60 days following the entry of the March 6, 2015 order, and on May 12, 2015 Plaintiffs moved to dismiss Defendants answers, affirmative defenses, and counterclaim with prejudice and to enter judgment. The motion was accompanied by a "Certified Statement of Proof" by both Rahman and Loskor. The motion was unopposed by Defendants. On May 29, 2015, an order was entered striking Defendants answers, counterclaim and defenses with prejudice pursuant to N.J.R. 4:23-5(a)(2).[2] The order also entered judgment in favor of Plaintiffs and against Defendants in the amount of $599,828.31. The order does not

---

[1] N.J.R. 4:23-5(a)(1) provides, in relevant part, that:

> If a demand for discovery pursuant to R. 4:17, R. 4:18, or R. 4:19 is not complied with and no timely motion for an extension or protective order has been made, the party entitled to discovery may, except as otherwise provided by paragraph (c) of this rule, move, on notice, for an order dismissing or suppressing the pleading of the delinquent party. . . . Unless good cause for other relief is shown, the court shall enter an order of dismissal or suppression without prejudice.

[2] N.J.R. 4:23-5(a)(2) provides, in relevant part, that:

> If an order of dismissal or suppression without prejudice has been entered pursuant to paragraph (a)(1) of this rule and not thereafter vacated, the party entitled to the discovery may, after the expiration of 60 days from the date of the order, move on notice for an order of dismissal or suppression with prejudice. . . . The motion to dismiss or suppress with prejudice shall be granted unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated.

contain any findings of fact or conclusions of law, nor does the record before this Court indicate that any such findings were placed on the record orally in the State Court Litigation.

## Legal Analysis

<u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a) (made applicable to adversary proceedings pursuant to Fed. R. Bankr. Proc. 7056). As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (internal quotation and citation omitted). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." <u>Knauss v. Dwek</u>, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). In doing so, the court must construe facts and inferences in a light most favorable to the non-moving party. *See* <u>Am. Marine Rail NJ, LLC v. City of Bayonne</u>, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing <u>Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.</u>, 475 U.S. 574, 578-88 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact . . . ." <u>Huang v. BP Amoco Corp.</u>, 271 F.3d 560, 564 (3d Cir. 2001) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." <u>Horowitz v. Federal</u>

Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Here, the legal issue does not implicate the disputed facts underlying the complaint, but rather the undisputed procedural history regarding the State Court Litigation and whether that procedural history is sufficient, as a matter of law, to support a finding that the elements of collateral estoppel are sufficiently present so as invoked the principle.

Collateral Estoppel

Collateral estoppel is an equitable doctrine that prohibits the relitigation of issues that have been adjudicated in a prior lawsuit, and the principle applies in bankruptcy discharge proceedings.  Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991); In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997).

As the judgment was entered against Defendants in New Jersey state court, it is appropriate to apply New Jersey law regarding the applicability of collateral estoppel.  *See* In re Docteroff, 133 F.3d at 214 ("The Court shall apply federal principles of *res judicata* and collateral estoppel with respect to decisions rendered by a federal court, and must apply corresponding state principles with respect to decisions rendered by a state court.").

Under New Jersey law, collateral estoppel may be used to estop a claim when:

(1) The issue to be precluded is identical to the issue decided in the prior proceeding;
(2) The issue was actually litigated in the prior proceeding;
(3) The court in the prior proceeding issued a final judgment on the merits;
(4) The determination of the issue was essential to the prior judgment; and
(5) The party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

In re Estate of Dawson, 136 N.J. 1, 20 (1994) (citations omitted). *See also* Ivashenko v. Katelyn Court Co, 401 N.J. Super. 99, 109 (App. Div. 2008), *cert. denied*, 196 N.J. 464 (2008).

Generally, in New Jersey collateral estoppel is applied where "a party has had his day in court on an issue," In re Azeglio, 422 B.R. 490, 495 (Bankr. D.N.J. 2010) (citing Zirger v. General Accident Ins. Co., 144 N.J. 327, 228 (1996), and where a "'judgment on the merits' is entered 'in an adversarial context.'" In re Azeglio, 422 B.R. at 495 (citing Slowinski v. Valley National Bank, 264 N.J. Super 172, 182-83 (App. Div. 1993). Even where [the elements of collateral estoppel] are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so. Kozlowski v. Smith, 193 N.J. Super. 672, 675 (App.Div. 1984). "The application of the collateral estoppel doctrine is not automatic, and should not be applied 'if there are sufficient countervailing interests.' Importantly, this doctrine precludes relitigation only of questions 'distinctly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted). Efficiency is subordinated to fairness and, consequently, if the court is satisfied that efficiency would lead to an unjust result, its application should not be tolerated. *See* Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 166 (App.Div. 1987).

When applying the New Jersey state standard in a bankruptcy proceeding, a bankruptcy judge is required to review the entire record to determine whether to apply collateral estoppel to a state court judgment. *See* In re Ross, 602 F.2d 604, 608 (3d Cir 1979). A court cannot merely accept the stated legal conclusions of the prior court at face value. *See* In re Himowitz 162 B.R. 109, 112 (Bankr D.N.J. 1989). Review by the bankruptcy court is limited to a determination of the question of whether the issues determined by the prior court compel a legal conclusion by this court as to the dischargeability of a debt. *See* id. at 113.

Although bankruptcy courts have exclusive jurisdiction to determine dischargeability issues, the doctrine of collateral estoppel may be used by the bankruptcy court to foreclose relitigation of certain facts underlying the determination of dischargeability. *See* In re Martin, 130 B.R. 930, 942 (Bankr. N.D. Ill. 1991) (citations omitted). The elements of common-law fraud are identical to those necessary for establishing "actual fraud" under 11 U.S.C. § 523(a)(2). *See* Field v. Mans, 516 U.S. 59, 70 n. 9 (1995) ("we construe the terms in § 523(a)(2)(A) to incorporate the general common law of torts . . ."). Where fraud is the only cause of action pleaded as to the individual Defendants, a court may presume that the judgment was based on fraud. *See* In re Bashlow Realty Co., Inc. v. Zakai, 2010 WL 1529568 at *6 (Bankr. D.N.J. Apr. 14, 2010). But, "[w]here a judgment is 'decided from the bench' and not supported by specific findings of fact, courts determining identity of the issues have inferred that an issue was decided by a prior court so long as it is a 'necessary inference' from the prior court's judgment." Id.

In In re Himowitz, the bankruptcy court declined to apply collateral estoppel where a prior district court order held that debtor incurred a debt by fraud or defalcation while acting in a fiduciary capacity, the exact wording used in 11 U.S.C. § 523(a)(4). Regardless, the bankruptcy court found that in the absence of a transcript or any other explanation of the reasoning behind the order, or the facts which the district court found which caused it to enter judgment, collateral estoppel could not be applied. *See* In re Himowitz, 162 B.R. at 113.

In New Jersey, "collateral estoppel does not apply to default judgments because such judgments are not 'actually litigated' as required by the second prong [of the elements of collateral estoppel]." Mattison v. Hawkins (In re Hawkins), 231 B.R. 222, 231 (D.N.J. 1999).

A sister bankruptcy court in this district analyzed New Jersey law and concluded that, beyond entry of a default judgment, even where a litigant substantially participates in pretrial

proceedings, but did not have notice of and did not appear for trial, the matter was not "actually litigated." *See* In re Azeglio, 422 B.R. 490 (Bankr. D.N.J. 2010). That court found that despite the debtor's participation at the beginning of the litigation, his non-participation in the trial gave no opportunity to present a defense, making the proceeding akin to the entry of default. Id. at 497. However, the same bankruptcy court applied the doctrine in entering summary judgment against a state court co-defendant of the In re Azeglio debtor, who filed a separate bankruptcy. *See* In the Matter of Stewart, 2013 WL 2501931 (Bankr. D.N.J. June 11, 2013). The court noted that the debtor in In the Matter of Stewart had notice of the trial, though he was apparently told by counsel for the plaintiff that he did not need to appear, and did not do so. Id. at *4. In entering summary judgment against the debtor the bankruptcy court in Stewart concluded that all elements of collateral estoppel were met, although it noted that the issue of whether the matter was "actually litigated" was not raised during oral argument, though it was touched upon in the written opposition to the motion. Id. at *4, n.3.

Another court analyzing collateral estoppel in New Jersey found that its review of the caselaw "suggests that New Jersey law would [not apply collateral estoppel] even if the defendant had notice and willfully declined to participate in the proceedings, or participated to some extent." In re Moses, 2013 WL 3804721, *7 (Bankr. E.D.N.Y. July 19, 2013). *See also* In re Fisher, 2017 WL 590306 (Bankr. D.N.J. Jan. 24, 2017) (where debtor had knowledge of, but did not attend arbitration hearing where evidence was taken and witnesses were examined, matter was not "actually litigated"); Milenkovic v. Gonazalez, 2012 WL 2064535 (Bankr. D.N.J. June 7, 2012) (matter not actually litigated where defendants filed two motions to vacate after default judgment entered). *But see* In re Bashlow Realty Co., Inc. v. Zakai, 2010 WL 1529568 (finding matter was "actually litigated" where debtor filed an answer in the state court action).

The Third Circuit has held that where a judgment is entered as a discovery sanction, the litigant against whom the judgment is entered is deemed to have actually litigated the issue for the purposes of collateral estoppel.  *See* In re Docteroff, 133 F.3d at 215.  In that case the debtor was sued in the United States District Court for the Western District of Washington.  He "participated extensively in the lawsuit.  He filed an answer, noticed [his adversary's] deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel.  Apparently Docteroff realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery."  Id. (citations omitted).  Debtor "repeatedly and in bad faith refused to submit to properly noticed depositions or respond to numerous legitimate requests for the production of documents despite court orders and warnings."  Id. at 213.  The district court made a finding that the "non-compliance with discovery rules and Court orders was the product of willfulness and bad faith."  Id. (citing Wolstein v. Bernardin, 159 F.R.D. 546, 552 (W.D. Wash. 1994)).  Default judgment was entered against debtor on the issue of liability and a trial on damages was scheduled at the time debtor filed a Chapter 11 bankruptcy petition.  Id.  The Third Circuit found that debtor's deliberate prevention of the resolution of the district court lawsuit should be deemed to be actual litigation.  Id. at 215.  It reasoned that, "[t]o hold otherwise would encourage behavior similar to Docteroff's and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple."  Id.

The In re Docteroff decision spoke to an underlying default judgment entered by a federal court, and the court noted it would therefore apply federal law to its collateral estoppel analysis.  But, a bankruptcy court in this district applied the holding to a state court judgment based upon a state court discovery sanction.  *See* Walters v. Tehrani, 2015 WL 1815510 *10 (Bankr. D.N.J.

Apr. 21, 2015) (New Jersey collateral estoppel principles consistent with Docteroff).  In the Walters case the debtors filed their bankruptcy after the state court had entered orders suppressing their defenses with prejudice and denying several motions to vacate the order.  Id. at *2.  After the bankruptcy court abstained in favor of the state court proceeding and lifted the stay to allow the state court case to proceed to final judgment, the state court conducted a proof hearing on the issue of damages and fraud.  Id. at *2-3.  At the hearing, the state court judge "held a hearing, heard testimony, and thoroughly analyzed the evidence under each element of fraud."  Id. at *8.  The district court in Walters ultimately affirmed the bankruptcy court's reliance on In re Docteroff due to the factual similarities, namely that the debtors:

> [W]ere given ample warning and multiple opportunities to comply with discovery procedures, but chose not to do so.  As a result, they were eventually precluded from presenting their defenses.  The Walterses, like the defendant in Docteroff, actively participated in the state court proceeding.  They filed an answer, filed moving papers, communicated with opposing counsel, and engaged in discovery disputes.  Under those circumstances, it was proper for [the bankruptcy court judge] to find that the Walterses had actually litigated the case in state court for purposes of collateral estoppel.

Id. at *9.

Application to Facts

In this matter, Plaintiffs urge this Court to follow the holding of In re Docteroff and apply collateral estoppel, as the underlying state court judgment is based upon a discovery violation.  Defendants submit that the facts of the case demonstrate that the state court judgment is more akin to a default judgment and that the principles of equity dictate that collateral estoppel should not apply.

This is a difficult factual scenario. This Court's review of applicable caselaw shows no clear standard for determining whether collateral estoppel applies to prevent relitigation of issues following entry of a default judgment as a discovery sanction. Analysis is made on a case-by-case basis and is factually dependent, which is consistent with the application of an equitable doctrine. The case before this Court is no different.

Defendants' self-serving narrative regarding their level of engagement in the State Court Litigation is unavailing and somewhat contradictory. They indicate that they were "ready and able to respond to the discovery," but could not afford the additional monies required by their attorney to continue his representation. Yet, their attorney's certification in support of his motion to withdraw indicated that Defendants failed to "[provide] counsel [with] information in response to Plaintiffs' written interrogatories and document requests, despite multiple requests." Regardless of this discrepancy, it is unclear why, if Defendants were "ready and able to provide discovery," that they did not do so *pro se*. They were aware of the motions. The motions clearly outlined the consequences for failure to respond to discovery. Defendants had previously appeared in the case *pro se* and have given no reason why they would not even attempt to do so when confronted with the prospects of their answer being stricken and judgment being entered against them.

Defendants state that Plaintiffs "took advantage of Defendants' dispute with their attorney and moved aggressively to have Defendants' answer stricken." Yet, Plaintiff's initial motion to strike the answers was filed over five weeks before the Defendants' attorney filed his motion to withdraw as counsel. At the time the state court entered its January 9, 2015 order regarding Plaintiffs' initial motion to strike, the discovery requests had been outstanding for over five months. Still, the state court did not strike the answer, but rather gave Defendants another

month to comply with the requests.  Even conceding that there may have been some confusion over responding to the motion while their attorney's motion to withdraw was pending, another month passed before the state court entered the judgment without prejudice.  The very language of N.J.R. 4:23-5(a)(2) provided Defendants with an additional 60 days to cure from that point before judgment with prejudice entered.  All told, from the time answers to the discovery requests were due, to the entry of judgment with prejudice over ten months had passed.  Even from the point of Defendants' attorney's withdrawal from the case over three months passed before judgment with prejudice entered.  This Court does not consider that amount of time to be an overly "aggressive" timeframe for compliance with basic discovery requirements, particularly where Defendants certify that they were "ready and able" to do so.

      Defendants go on to certify that their attorney referred them to bankruptcy counsel who "failed to list Loskor and Rahman as creditors in the initial bankruptcy filing and as a result the final judgments were entered in State Court," and therefore the judgments were the result of the misconduct and negligence of their prior attorneys.  This timeline does not make sense.  The judgment was entered in state court on May 29, 2015.  Defendants filed their bankruptcies on September 22, 2015, nearly four months after judgment was entered.  To the extent that the bankruptcy petitions failed to list Loskor and Rahman, such omission had no effect on the entry of judgment in the State Court Litigation, which had already occurred.  Defendants had knowledge of the date of the pending motions in the State Court Litigation.  To the extent that they intended to file in advance of that return date, it was incumbent upon them to ensure that any bankruptcy counsel they may have hired filed the bankruptcy petitions prior to the entry of the judgment.

Finally, this Court is troubled by the fact that Defendants filed a motion to strike the complaint in the State Court Litigation as a sanction for Plaintiffs' failure to provide discovery, but when faced with a similar motion Defendants refused to respond in kind with the production that was responsive to Plaintiffs' requests.

Despite this, the matter is distinguishable from In re Docteroff and Walters. The behavior of the debtors in those cases was far more egregious than that of Defendants here. In In re Docteroff, the debtor engaged in gamesmanship throughout the discovery process, requesting multiple adjournments of scheduled matters, ignoring a court order explicitly requiring his appearance at a deposition, providing unsigned responses to written discovery, and failing to produce documents which were in his control. *See* Wolstein v. Bernardin, 159 F.R.D. 546, 550-51 (W.D. Wash. 1994).

In addition to the factual differences, the differences between federal and state discovery rules of procedure may account for the result reached by the In re Docteroff court. The judgment in that case was based upon Fed. R. Civ. P. 37, which contains several potential sanctions for discovery violations, and which requires a court to analyze the sanctions available in response to a discovery violation. For a sanction of default judgment to be entered, a court must consider a five factor test, which includes a factor determining whether less drastic sanctions are available. Id. at 552. The lower federal court in In re Docteroff performed such analysis and concluded that entry of judgment was appropriate. In comparison, N.J.R. 4:23-5(a), contains strict procedural requirements and provides an additional automatic 60 day period between the entry of judgment without prejudice and judgment with prejudice. Where the rule's provisions are complied with, judgment is the sole remedy and the court need not perform any analysis concerning its appropriateness *vis-a-vis* other options.

Even in the Walters case, where the New Jersey court rule was applied, the actions of the debtor went beyond that of the Defendants here. There, the debtors were actively participating in motions surrounding their tardy discovery. Even as they moved to vacate or reconsider the state court's suppression orders, they were still not able to certify that discovery had been fully and responsively provided. Specifically they failed to provide an accounting which the state court judge had found to be a material deficiency. Walters v. Tehrani, 2015 WL 1815510 at *2.

Both the In re Docteroff and Walters courts distinguished the default judgments entered by the trial courts from "a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason." *See* Walters at *9, *citing* In re Docteroff, 133 F.3d at 215.

Whereas the In re Docteroff and Walters debtors were active participants in the discovery process and were willfully noncompliant with court orders which led to the entry of judgment, here it appears the Defendants simply stopped participating in the State Court Litigation. They claim they could not continue because they could not afford to replace their attorney. The timing of the nonparticipation coincided with the discovery process, leading to the entry of the judgment as a discovery sanction. Defendants' non-action in this case is more factually equivalent to the non-action of the debtor in In re Azeglio. In that case, there was substantial participation in the pretrial proceedings, followed by an abandonment of the action which led to a judgment without the debtor presenting a defense. But, unlike Defendants herein, the debtor in In re Azeglio had no notice of the trial. The Defendants here had notice and knowledge of all of the pleadings and motions in the State Court Litigation and thus had the opportunity to prevent the judgment with prejudice from entering. Even as *pro se* litigants they could have done something, anything, to

let the state court know that they wished to avoid the entry of judgment. But, the nature of the non-participation in the portion of the State Court Litigation from which the judgment entered makes this Court reluctant to find that the matter of fraud was actually litigated for the purposes of collateral estoppel.

We are cognizant of the reasoning behind the Third Circuit's decision in In re Docteroff, namely that the application of collateral estoppel to judgments based on discovery sanctions serves as a deterrent to those litigants who might otherwise abuse the court system. While sharing the Third Circuit's desire to prevent such abuse, this Court believes that simply applying a bright-line rule that a discovery sanction judgment collaterally estops any further litigation was not the intention of the court in In re Docteroff. Such a rule would eviscerate the equitable considerations inherent in the principle of collateral estoppel. The specific facts of this case, in which the behavior of the Defendants does not seem to rise to the level of an abuse of the processes and dignity of the courts, preclude this Court from applying collateral estoppel herein.

Our review of the record in the State Court Litigation further strengthens the belief that collateral estoppel is not appropriate based upon the facts of the case. This Court concludes that this is a case where efficiency must be subordinated to fairness, and where collateral estoppel cannot be applied based upon equitable considerations. We are required to examine the full State Court Litigation in the context of collateral estoppel. We note that our review does not warrant any opinion regarding the correctness of the state court's decision or the propriety of its proceedings. The record in this case, as in In re Himowitz, is completely bereft of any indicia of what analysis, if any, the state court performed as to the existence of fraud in entering the judgment against Defendants. This calls into question whether the issue to be precluded (in this

case, fraud), is identical to the issue decided in the prior proceeding, as well as whether the issue (again, fraud) was essential to the prior judgment.

The only cause of action pleaded in the State Court Litigation as to the individual defendants was fraud, thus there could be a presumption that the judgment was based upon that cause of action. The elements for common law fraud are identical to those necessary for "actual fraud" under 11 U.S.C. § 523(a)(2). Based only upon those two facts it would be easy to presume that if solely fraud was pleaded, and judgment was entered, then the judgment must be based upon fraud. We find that the facts herein highlight why applying such a formulaic approach would be folly in light of the equitable roots of collateral estoppel.

The record before this Court casts serious doubt as to whether the issue of fraud was sufficiently determined by the state court such that this Court is compelled to conclude the debt is non-dischargeable. There is no transcript of any oral findings by the state court, as the matter was decided on the papers and no hearing was held. There were no written findings. The only evidence on the record is the short, conclusory certified statements of proof by Loskor and Rahman. This distinguishes the case at bar from the <u>Walters</u> case, where the state court judge held a proof hearing, took testimony, and thoroughly analyzed each element of fraud. Here, at least from a review of the record, it appears that the judgment was primarily based on a discovery violation, as opposed to the fraud allegations underlying the complaint. If the issue of fraud was not essential to the entry of the judgment, then the elements of collateral estoppel are not met.

Without questioning the state court's decision or methods, this Court notes that even a cursory review of the pleadings leads to glaring questions when analyzed in the context of fraud, which remain unanswered based upon the record. By way of example, the state court complaint

only states that Mohammad Ehsan and Mohammed Rahman made representations to Plaintiffs, yet judgment is also entered as to Murshada Ehsan and Sharmilly Chowdhury, though the complaint contains no allegations of a specific misrepresentation made by these individuals. Loskor and Rahman's certified statement of proofs do state that "Defendant Caltech, by and through the individual Defendants, represented that Caltech was engaged in the wholesale distribution of automotive and industrial scrap metals . . ." Still it is tenuous to impute liability to Murshada Ehsan and Sharmilly Chowdhury based upon that statement. There is nothing presented to this Court which would provide context as to the basis for the judgment against these two individuals.

Similarly, it appears that the only proof of liability submitted in the certified statement of proofs, which evidences the Loskor loan, is a promissory note signed by Mohammed Ehsan as CEO of Caltech. The only evidence of the Rahman loan is an e-mail from Mohammad Rahman which acknowledges an investment in Caltech and outstanding dividends on that investment. It is unclear upon what facts or what basis the liability of Caltech was imputed to the individual Defendants, as the record does not contain such findings.

With these substantial issues remaining after a careful and thorough review of the record, this Court cannot conclude that the issue of fraud was decided in the State Court Litigation, or that fraud was essential to the judgment, and therefore applying the doctrine of collateral estoppel in this instance is not appropriate. Our view may have been different if there had been a more robust record of the reasoning and findings of the state court. In the absence of a deeper understanding of that reasoning and, in light of the questions remaining as to some of the basic issues of fraud, it would be inequitable to estop Defendants from presenting their proofs to this Court.

**Conclusion**

Defendants did not participate in the motion practice that led to the state court discovery violation judgment against them, and thus were unable to present a defense to the fraud claim in an adversarial context. Therefore the issue of fraud was not actually litigated. Additionally, this Court's review of the record in the State Court Litigation shows the record is insufficient to support a finding that the issue of fraud was fully developed or decided in that venue. As the elements of collateral estoppel have not been met, and because the specific facts of this case would make the application of the doctrine inequitable, Plaintiffs' motion for summary judgment is DENIED.

Dated: February 2, 2018　　　　　　　　**/s/Christine M. Gravelle**
　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge